```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Katherine Minahan

    v.                                             Civil No. 19-cv-1083-JD
                                                       Opinion No. 2020 DNH 037

Andrew Saul, Commissioner
Social Security Administration


## O R D E R

Katherine Minahan seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision that denied her application for disability insurance benefits under Title II. In support, she contends that the Administrative Law Judge ("ALJ") erred in assessing her residual functional capacity and made other errors in finding that she was not disabled. The Commissioner moves to affirm.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings if they are supported by substantial evidence. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).

Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154. The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## Background

### A. Factual Statements

Under the Local Rules in this district, the plaintiff is required to file a statement of material facts to accompany her memorandum of law in support of her motion to reverse the decision of the Commissioner. LR 9.1(c). In response, the Commissioner files a motion to affirm the decision, accompanied by a supporting memorandum of law, and may file a statement of facts but "**only** to the extent the government determines material facts were omitted from the plaintiff's statement." LR 9.1(d). Further, every fact must be supported by a citation to the administrative record. LR 9.1(c) & (d).

The Commissioner filed a five-page statement of facts in support of his memorandum to affirm. Some of the facts merely repeat facts stated by Minahan, which violates LR 9.1(d). In addition, the Commissioner states in his memorandum: "the Commissioner incorporates by reference the facts set forth in the ALJ's decision (Tr. 17-27)." Doc. 8-1, at *2. Local Rule 9.1 does not provide for incorporating facts by reference. Further, the Commissioner may only provide facts that were omitted by Minahan, which precludes a general incorporation of facts by reference. Therefore, the court will not consider the ALJ's decision as part of the Commissioner's factual statement. Counsel is cautioned about using this approach in the future.

B. Summary of Background Information

Katherine Minahan has a high school education and a year of college. She worked as a credit manager with Datawatch Corporation until September of 2014. She then worked on a part time basis as a massage therapist for Ataraxia, LLC. She was sixty-three years old when she left Datawatch.

Minahan was diagnosed with breast cancer in August of 2015. As a result, she had a left partial mastectomy, or a lumpectomy, in September of 2015. She then had radiation therapy for six weeks, which caused side effects of fatigue, nausea and vomiting, and loss of appetite.

In December of 2015, Minahan applied for social security benefits. As part of her application process, she met with Benjamin Garber, Ph.D., for a psychological examination. Dr. Garber found that Minhan had had major depression in reaction to her medical issues but that condition was remitted. Dr. Garber found that Minahan could manage activities of daily living and social functioning and had the ability to understand and remember short and simple instructions, to concentrate and complete tasks, and to tolerate stress. Dr. Garber recommended psychotherapy and outpatient psychopharmacological management. Minahan has addressed her mental health issues with alternative methods such as yoga and medication.

Minahan was screened for colon cancer and then underwent procedures to remove a polyp found in her colon. She has been diagnosed with osteoporosis and osteoarthritis.

Because of asymmetry in her breast size caused by the lumpectomy, Minahan states that she experienced pain in her back and her shoulder from the asymmetry. The Commissioner notes Minhan's hearing testimony where she stated that she chose to have reconstructive surgery because she had problems buying clothes due to the asymmetry and because she thought she might have problems with her shoulders in the future. She elected to have reconstructive surgery to correct breast asymmetry in

November of 2017. The recuperation post surgery included pain and limitation of movement in her shoulder.

Minahan continued to work part time as a massage therapist after her first breast surgery and again after reconstructive surgery. Her last insured date was June 30, 2017.

A hearing was held on June 14, 2018, on Minahan's application for benefits when Minhan testified, and a vocational expert also testified. A second hearing was held before an ALJ on October 9, 2018, which included testimony from a medical expert. Minahan testified at the hearing and was represented by counsel. Dr. Joseph Gaeta testified as a medical expert, and Susan Gaudette testified as the vocational expert. The ALJ issued a decision on October 31, 2018, finding that Minahan was not disabled from her alleged onset date of September 14, 2015, through her last insured date of June 30, 2017. The Appeals Council denied Minahan's request for review, making the ALJ's decision the final decision of the Commissioner.

## Discussion

Minahan moves to reverse the decision of the Commissioner, arguing that the ALJ erred in relying on the medical expert and in assessing her residual functional capacity. Minahan also contends that the ALJ erred in failing to consider a closed

period of disability.  The Commissioner moves to affirm, asserting that substantial evidence supports the decision.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 416.920.  The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.  Purdy, 887 F.3d at 9.  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  If no finding of disability is made at the third step, the ALJ assesses the claimant's residual functional capacity before addressing steps four and five.  20 C.F.R. § 404.1520(e).

A.  Residual Functional Capacity

Residual functional capacity is what the claimant "can still do despite his or her limitations."  Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  A residual functional capacity assessment is a determination of the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(4).  In assessing a claimant's residual functional capacity, an ALJ considers "only limitations and restrictions attributable to medically determinable impairments" and cannot consider the

6

claimant's age, size, physique, or weight unless those factors are related to a medically determinable impairment.  SSR 96-8p, at *2.  The claimant is responsible for providing the evidence that the ALJ uses to make the residual functional capacity assessment.  § 404.1545(a)(3).

In this case, the ALJ found that Minahan has the residual functional capacity "to perform a full range of work at all exertional levels" except that she "can never reach overhead with her right arm."  AR, p. 22.  That finding was based on the opinion of the medical expert, Dr. Gaeta, who found that Minahan had no limitations except that she was unable to reach overhead with her right arm, which the ALJ found was supported by Minahan's records.

The ALJ noted that after her first surgery in September of 2015, Minahan completed radiation treatment and made a good recovery.  Minahan was able to exercise, drive, shop, and do housework.  Her medical care providers reported that she appeared to be well and that she said she was feeling well.

Minahan challenges the residual functional capacity assessment on the grounds that she could not work at all exertional levels immediately after her breast surgery and that other concerns related to her breast cancer impaired her ability to work.  She also contends that the ALJ should have limited her to sedentary work, that he failed to include a limitation for

7

being repeatedly off task and absent, that he failed to consider the impairments caused by breast asymmetry and reduction surgery, that he failed to properly consider her testimony about the intensity and persistence of pain, and that he erred in relying on the medical expert's opinion that lymphedema was not an issue. The Commissioner points to evidence in the record that supports the ALJ's decision.

1. Opinions of the Impartial Medical Expert – Dr. Gaeta

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[1] An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. § 404.1527(b). An ALJ evaluates medical opinions based on the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other

---

[1] Because Minahan's claim was filed before March 27, 2017, the version of § 404.1527 before amendment applies here.

8

factors including the understanding the source has of the social security system. § 404.1527(c); see also Prybylski v. Saul, 2019 WL 7568228, at *8 (D.N.H. Dec. 12, 2019).

During the hearing, Minahan's counsel asked Dr. Gaeta about Minahan's post-surgery care and specifically about her own responsibility to prevent lymphedema. Dr. Gaeta testified that lymphedema did not usually occur with Minahan's procedure and that she did not have a diagnosis of lymphedema. He described what he thought would be the appropriate treatment for someone with lymphedema but said that Minahan would not have had to do anything to treat lymphedema because she did not have it and did not need to do anything to prevent it. Minahan's counsel persisted in asking about post-surgical care, and Dr. Gaeta explained that the questions were beyond his area of expertise.[2]

Minahan faults the ALJ for coming "to a conclusion on an important medical issue in rel[ia]nce upon the testimony of a medical expert, when the medical expert testifi[ed] that he was not an expert on that issue." Doc. 6-1, at *8. Minahan states:

> In effect the ALJ, based in large part on the testimony of an admitted non-expert on the subject [of] post-surgical preventative care, has ruled that the [sic] Ms. Minahan should have worked full time as a 'bagger' or some other such nonsensical occupation, for a woman of her age and residual functional capacity, rather than devote herself to recovery and

---

[2] Dr. Geata is board certified in internal medicine and cardiology.

9

>     prevention as ordered by her doctors; all the while
>     risking lymphedema and other adverse health effects
>     related to stress.

Id. In her response to the Commissioner's motion to affirm, Minahan attempts to analogize her challenge to Dr. Gaeta's testimony with the issue addressed in Biestek, 139 S. Ct. 1148, but neither the issue nor the analysis is analogous to the circumstances in this case.[3]

Although far from clear, Minahan appears to interpret the ALJ's decision to find that she could have worked full time immediately following breast surgery in September of 2015 when she was recovering and receiving treatment.[4] She attributes that presumed finding to Dr. Gaeta's testimony that she did not need to do any post-surgery care to prevent lymphedema. She challenges Dr. Gaeta's opinion on the ground that Dr. Gaeta said he was not an expert on post-surgery care and that her course of

---

[3] In Biestek, the plaintiff argued that a vocational expert's testimony could not provide substantial evidence to support the ALJ's decision because the vocational expert refused to disclose the supporting data for the testimony. 139 S. Ct. at 1154. The Supreme Court declined to impose the categorical rule the plaintiff urged and instead held that whether there is substantial evidence must be decided under the particular circumstances on a case-by-case basis. Id. at 1157. Minahan has not shown that the result there has any relevance to her challenge to Dr. Gaeta's testimony in this case.

[4] Minahan is not proceeding pro se. She was represented by counsel during the administrative proceedings and for purposes of judicial review.

treatment "presumably helped her to not develop lymphedema or a relapse of cancer."  Id.

Minahan is mistaken.  The ALJ did not make a finding that she could work full time immediately after her surgery.  Instead, he found that the record evidence did not show that she was disabled by impairments for a continuous period of twelve months.  Therefore, Minahan's challenge is based on a misunderstanding of the decision.

In addition, based on Minahan's testimony, the treatment she used to prevent lymphedema was her own creation, based on her experience as a massage therapist.  She did not testify that the treatment was prescribed by her physicians and did not cite medical records to show that the treatment was prescribed.[5]  She also appeared to testify that she did not tell her physicians that she was doing her own treatment to prevent lymphedema.

Further, Dr. Gaeta did not say he lacked expertise in understanding lymphedema.  He said post-surgical care was not his area of expertise.  Because Minahan lacks any evidence that she had lymphedema or that her physicians prescribed the

---

[5] In her response to the Commissioner's motion to affirm, Minahan provides citations to articles on the internet about lymphedema.  She does not provide any citation to the record, however, to show that her own physicians diagnosed lymphedema or prescribed a treatment to prevent it.

treatments she used to prevent lymphedema, Dr. Gaeta's opinion is unchallenged, and the ALJ properly relied on it. Minahan's argument lacks merit.

   2.   Subjective Statements

In assessing residual functional capacity, an ALJ must consider a claimant's statements about her symptoms and pain in addition to the objective medical evidence and other evidence in the record. Coskerly v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (discussing SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)). To evaluate the limiting effects of a claimant's symptoms and pain, the ALJ first determines whether the claimant had a medically determinable impairment that could be reasonably expected to produce the alleged symptoms. SSR 16-3p, at *3.[6] If that is found, the ALJ evaluates the intensity and persistence of the claimant's symptoms and determines the extent they limit the claimant's ability to do work-related activities. Id. at *4. The ALJ considers the objective medical evidence in making that evaluation but will not disregard a claimant's statements based only on inconsistency with objective medical evidence and instead will also consider statements from the claimant, medical

---

[6] Because the ALJ issued his decision after March 16, 2016, SSR 16-3p applies in this case. Minahan cites the superseded SSR in her memorandum.

sources, and others who might have information about her symptoms. Id. at *5.

The ALJ in this case found that Minahan had "chronic right shoulder dysfunction, secondary to breast cancer treatment." AR, p. 18. That finding was based on Dr. Gaeta's testimony. The ALJ found that other impairments were not severe based on Minahan's testimony, the reports of her medical care providers in the record, Dr. Gaeta's testimony, and objective medical evidence. He also found that depression was not a severe impairment based on Dr. Garber's examination and functional report.

Minahan contends that the ALJ failed to look at her impairments in combination and, in particular, failed to consider the effects of her demanding self-care regimen on her ability to work.[7] She states that much of her self care was focused on preventing lymphedema. As is explained above, whatever Minahan's self-care regimen entailed, she has not shown that her treatment was prescribed by any medical source. She provides no evidence, other than her own opinions, that her self-care regimen was necessary. Dr. Gaeta testified that it

---

[7] In essence, Minahan argues that she was disabled not because of physical or mental impairments that prevented her from working but instead because she did a self-care regimen that she imposed on herself.

13

was not necessary.  The ALJ properly considered and evaluated her physical impairments.

Minahan also faults the ALJ for failing to find a severe impairment due to depression, relying on her own reports of self care for depression.  She states: "[T]here is no question that Ms. Minahan has suffered from major depression."  In support, she cites page 384 of the Administrative Record which is a page in Dr. Garber's report that says nothing about depression.  Later in the report, on page 386, Dr. Garber noted that Minahan had had major depression in reaction to her medical status but that her depression was in remission.  Dr. Garber found no limitations in Minahan's functional capacity based on depression or on any other mental impairment.  Dr. Craig Stenslie, a state agency consultant psychologist, also found no significant functional impairments caused by depression.  Therefore, the ALJ's finding that depression was not a severe impairment is supported by substantial evidence in the record.

### 3. Sedentary Work

Minahan argues that the ALJ should have limited her to sedentary work which would have resulted in a finding that she was disabled under the Medical-Vocational Guidelines.  In support, Minahan contends that she could only do sedentary work because that was the nature of the work she had done previously

14

and because it was necessary to prevent lymphedema.  She cites no medical evidence or opinion that shows she was limited to sedentary work.  Minahan, therefore, has not shown the ALJ erred in failing to impose that limitation.

    4.  <u>Off Task and Absences</u>

The vocational expert testified that all of the jobs she had cited would be eliminated if the worker would be off task for fifteen percent of the day because of fatigue or if the worker could not complete an eight-hour work day.  She also testified that an average of two absences per month would eliminate the jobs she had listed.  Minahan argues that the ALJ erred in finding her not disabled in light of that testimony.  In support, Minahan states: "Even a cursory review of the voluminous medical record would suggest that [she] would be off pace due to fatigue and miss significant time out of work due to medical care."  Doc. 6-1, at *4.

As explained by the ALJ, the medical record actually shows that after her initial surgery and treatment, Minahan recovered well.  Minahan provides no evidence that she would likely have been off task or would have required frequent absences after that time.  Therefore, Minahan has not shown an error based on the vocational expert's testimony.

5.  Pain Due to Asymmetry

Minahan contends that the ALJ erred in concluding that evidence of her second breast surgery, to correct asymmetry, was not relevant because it occurred after her last insured date. She argues that the ALJ should have considered the disabling effects of pain that she experienced because of asymmetry before her last insured date. The testimony she cites, however, does not support her claim.

In her cited testimony, Minahan describes difficulty finding clothing. She also testified that she had reconstructive surgery because of a possibility that her "shoulder alignment was off and I got down the line [sic] I might have some problems so it was the best avenue to go because I was doing stretches to align myself all the time because of the weight and the way I carried myself so I decided to do that to ward off any possible shoulder issues down the line." AR, pp. 49-50. She testified later that she had had "[s]ome discomfort" when she worked. None of the cited testimony suggests disabling pain.

Substantial evidence in the record supports the ALJ's residual functional capacity assessment.

16

B.  Closed Period of Disability

   Minahan argues that the ALJ erred in not finding her disabled during a closed period.  A closed period of disability occurs when a claimant is found to be disabled and then, on review, the Commissioner determines that the claimant has improved so that she is no longer disabled.  20 C.F.R. § 404.1594; Lagasse v. Berryhill, 2018 WL 1871454, at *2 (D.N.H. Apr. 18, 2018).  To result in a disability finding, an impairment must be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509.

   Minahan has not shown that she applied for a closed period of disability and does not identify what twelve-month period she believes would qualify as a closed period of disability.  She cites no authority that an ALJ is required to consider and find a closed period of disability sua sponte.  See Roshi v. Comm'r of Social Security, 2015 WL 6454798, at *15 (D. Mass. Oct. 26, 2015) (declining to hold that an ALJ would have that responsibility).  Further, in the absence of evidence or developed argument to support a closed period of disability, Minahan has not carried her burden.  See Decker v. Astrue, 2010 WL 4412142, at 4-*5 (D. Me. Oct. 31, 2010).

   Therefore, the ALJ did not err in failing to find an unspecified closed period of disability.

Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 6) is denied.  The Commissioner's motion to affirm (document no. 8) is granted.  The Commissioner's decision is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

March 11, 2020

cc: Counsel of Record.